UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY C. MARTIN,

    Plaintiff,

    v.

CORIZON HEALTH SERVICES,

    Defendant.

CAUSE NO.: 3:18-CV-596-JD-MGG

OPINION AND ORDER

Anthony C. Martin, a prisoner without a lawyer, is proceeding in this case on a single claim against Corizon Health Services for denying him medical treatment based on its practice or policy of providing medical treatment only for life threatening conditions in violation of the Eighth Amendment. (ECF 2 at 18.) Corizon has filed a motion for summary judgment arguing that Martin failed to exhaust his administrative remedies. Martin responded to the motion and produced grievance documents (Exhibits C ad I) that were not included in the Indiana Department of Correction's grievance files. (ECF 20; ECF 20-1 at 6-7, 19-20.) As a result, Corizon sought to take Martin's deposition to learn more about these documents. (ECF 21.) This court granted the request. (ECF 22.) When counsel for Corizon deposed Martin, he questioned Martin about whether Exhibits C and I were forged. (ECF 27-1 at 79-84.) While Martin denies that the documents are forged, in an effort to avoid a dispute over the issue, Martin has filed a motion (ECF 23) asking the court to strike Exhibits C and I from the record. Because Martin's request is unequivocal and because Corizon does not object (ECF 26 at

4), the motion will be granted, and the clerk will be directed to strike Exhibits C and I from the record. Following Martin's deposition, Corizon filed a reply to its summary judgment motion, and Martin filed a sur-reply.[1] (ECF 26; ECF 28.) The summary judgment motion is now fully briefed and ripe for adjudication.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to

---

[1] Northern District of Indiana Local Rule 56-1(b) provides an opportunity for only a single response. While Martin's sur-reply was filed without leave of court, in the interest of justice, and considering Martin's *pro se* status, the arguments raised in Martin's sur-reply will be addressed.

draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable fact finder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement

. . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

The grievance policy for the Indiana Department of Correction provides that, before filing a grievance, an offender is required to attempt to resolve a complaint informally. (ECF 17-1 at ¶ 9.) If the inmate is unable to resolve the complaint informally, he may file a formal grievance with the Executive Assistant or Grievance Specialist utilizing state form 45471. (*Id.* at ¶ 11.) If the grievance is not resolved in a manner that satisfies the offender or if no response is received within twenty working days of submission, then an offender may file an appeal with the Department of Offender Grievance Management at IDOC's Central Office. (*Id.* ¶ 18.) If the appeal is submitted to the Grievance Specialist or Executive Assistant, it is logged and forwarded to the Department of Offender Grievance Management. (*Id.* at ¶ 19.) Each offender is advised of the grievance procedure during orientation and upon arrival at Indiana State Prison. (*Id.* at ¶ 7.)

According to the IDOC's grievance records, Martin has submitted numerous grievances, but none of those grievances pertain to the claim being pursued in this case: whether Corizon has a policy of denying medical care in the absence of a medical emergency. (*Id.* ¶¶ 23-30; ECF 17-3, 17-4, 17-5, 1-6, 17-7.) The court has reviewed each of the grievances submitted by Corizon, and only one requires further consideration. On July 29, 2016, Martin filed an informal grievance based on an alleged delay in receiving medical care for chest pain he experienced on July 28, 2016. (ECF 17-7 at 4.) Dawn

4

Nelson responded by indicating that Martin was seen on July 29, 2016, and that he was seen by a provider on August 9, 2016. She further indicated that "medical emergencies take priority." (*Id.*) Martin filed a formal grievance on this issue on August 16, 2016, referring to Nelson's response as "foolish," and he received a response on September 1, 2016. (ECF 17-7 at 1-2.) Corizon asserts that it was Nelson's response to this grievance that led Martin to conclude that Corizon had a policy of providing medical care only for life threatening emergencies.[2] (ECF 18 at 8; *see also* ECF 27-1 at 34-35.) While that is quite a leap, it ultimately has no bearing on the issue of whether Martin has exhausted his administrative remedies because, even if this grievance were construed as addressing the claim raised in this lawsuit, Martin did not file a grievance appeal and therefore never exhausted the grievance process as to that grievance. (ECF 17-1 at 29.) Furthermore, Martin offers no explanation for his failure to file a grievance appeal. (ECF 20; ECF 28.)

Martin does assert that, because he is seeking monetary damages, he had no obligation to grieve this matter. That argument, however, has been squarely rejected by the United States Supreme Court. *See Woodford*, 548 U.S. at 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process."). Martin supports his assertion that he can proceed here without exhausting his claim on a memo sent to him in November of 2018, that says that certain matters are not grievable, including "tort claims seeking

---

[2] Interestingly, Martin concedes that failure to adequately treat his chest pain is not an allegation at issue in this lawsuit. (ECF 27-1 at 33-34.)

5

monetary compensation." (ECF 20-1 at 17-18.) The November 2018 memo, however, could not have informed his decision not to file a grievance on this issue in 2016, and did not render the grievance process unavailable to Martin.[3]

Martin also alleges, in his sur-reply, that the grievance process was made unavailable to him once he moved to Pendleton Correctional Facility on August 19, 2016. More specifically he argues that the Grievance Specialist (Ms. Schurman) and her boss (Ms. Laura Bodkin) made the grievance process unavailable by continuous denials, rejections, and unreasonable responses. (ECF 28-1 at 4.) But Martin does not provide – or even describe in detail – any grievance or appeal that was denied, rejected, or otherwise hindered by either Schurman or Bodkin. Instead, Martin relies on an affidavit of another offender, Josh Harter, who claims that someone else entirely – Ms. Camay Francum – unreasonably denied, rejected, and hindered the offender grievance process for him while he was incarcerated at Pendleton. (ECF 28-1 at 5; ECF 28-2.) That another inmate's grievance process was impeded at the same facility is not evidence that Martin's grievance process was impeded.

Lastly, Martin alleges that Corizon has invited the court to play "duck, duck goose" with the multiple grievances in this case, despite the fact that "Dawn Nelson clearly states that the policy was in place and plaintiff challenged all available administrative remedies as to the issue at hand." (ECF 28-1 at 7.) Corizon has asked the court to review the grievance history to determine if Martin has exhausted his

---

[3] The Offender Grievance Process policy itself includes a list of non-grievable issues, but it makes no reference to monetary damages. (ECF 17-2 at 4-5.)

administrative remedies prior to bringing this lawsuit, as required. There is nothing inappropriate about Corizon's decision to pursue the affirmative defense that Martin did not exhaust his available administrative remedies prior to filing this lawsuit. And, as outlined above, a review of the IDOC's grievance records reveals that there is no evidence that Martin grieved the claim he has asserted against Corizon, much less that he exhausted his available administrative remedies. The undisputed evidence additionally shows that Martin was informed of the requirement that he exhaust his administrative remedies, but he initiated this lawsuit without exhausting those remedies as to his claim against Corizon. Furthermore, there is no evidence that the grievance process was made unavailable to Martin. Therefore, the court must grant Corizon's summary judgment motion.

For these reasons, the court:

(1) GRANTS Anthony C. Martin's motion to strike Exhibits C and I (ECF 23);

(2) DIRECTS the Clerk to strike Exhibits C and I (ECF 20-1 at 6-7, 19-20) from the record;

(3) GRANTS Corizon Health Services' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF 17);

(4) DIRECTS the Clerk to enter judgment for Corizon Health Services and against Anthony C. Martin.

SO ORDERED on August 12, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT